CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 126569)
Chief, Criminal Division

JEAN FUNDAKOWSKI (CABN 236255)
Assistant United States Attorney

 450 Golden Gate Avenue, Box 36055
 San Francisco, California 94102-3495
 Telephone: (415) 436-7014
 FAX: (415) 436-7234
 Email: jean.fundakowski@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | Case No. 3:25-CR-00339-01 JD |
|---|---|---|
| Plaintiff, | )<br>)<br>) | UNITED STATES' SENTENCING<br>MEMORANDUM |
| v. | )<br>) | Hearing Date:  March 16, 2026 |
| JORGE MENDOZA-CERRATO, | )<br>) | Hearing Time: 11:00 a.m. |
| Defendant. | )<br>)<br>) | Courtroom: Hon. James Donato |

**INTRODUCTION**

The United States and the defendant, JORGE MENDOZA-CERRATO, jointly respectfully request that the Court accept the recommendation of the United States Probation Office and Paragraph 8 of the parties' Rule 11(c)(1)(B) Plea Agreement and sentence the defendant to time served plus one court day with a release order so that he can be released into Immigration and Customs Enforcement custody for deportation proceedings.

This case is part of the United States Attorney's Office efforts to disrupt and dismantle the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevents drug traffickers from returning to the Tenderloin.  The program focuses on eradicating street-level dealing in the

UNITED STATES' SENTENCING MEMORANDUM 1
3:25-CR-00339 JD

Tenderloin in instances like this one where the defendant has limited criminal history and/or is apprehended with minor amounts of controlled substances.  In such cases, the United States seeks expedited prosecution that obtains a federal felony drug conviction coupled with a strict three-year Tenderloin stay-away order that immediately bars convicted drug traffickers from returning to the Tenderloin and thus dissuades them from engaging in further drug trafficking.  For the reasons set forth below, the United States and the defendant contend that the parties' proposed sentence—which accounts for the defendant's time served in this prosecution plus one court day and represents the high end of the applicable Guidelines range—alongside a three-year geographical restriction from the Tenderloin meets the statutory requirements of 18 U.S.C. § 3553(a).  U.S. Probation's Presentence Investigation Report ("PSR") concurs with the parties' recommendation.

I.      OFFENSE CONDUCT AND PROCEDURAL HISTORY

        A.      Defendant's November 2024 Arrest

        On November 8, 2024, at approximately 4:30 p.m., San Francisco Police Department ("SFPD") officers were conducting surveillance on the 700 block of O'Farrell Street in the Tenderloin of San Francisco.  PSR ¶ 7.  During surveillance near O'Farrell and Larkin Streets, officers observed a subject later identified as the defendant interacting with several individuals while he was crouched behind a vehicle and looking in multiple directions.  ¶ 7.  Officers observed the defendant engage in multiple hand-to-hand narcotics transactions, approached, and placed him under arrest.  *Id*.  An officer then interviewed one of the individuals who they had seen engage in a transaction with the defendant.  *Id*.  That person admitted that he had purchased $40 of cocaine base from the defendant; the officer seized that material, which tested presumptively positive for .3 grams of cocaine base using a TruNarc analyzer.  ¶ 8.

        Officers searched the defendant following his arrest and found U.S. currency totaling $139, suspected cocaine, suspected methamphetamine, suspected cocaine base, and a glass cylindrical pipe.  ¶ 9.  A TruNarc analysis of the gross weight of the substances found on the defendant tested presumptively positive for 8.3 grams of methamphetamine; 2.7 grams of cocaine base; and 1.3 grams of cocaine.  ¶ 9.

        During the preparation of the PSR, the case agent provided the laboratory test results for the

UNITED STATES' SENTENCING MEMORANDUM   2
3:25-CR-00339 JD

substances seized from the defendant at the time of his arrest to U.S. Probation.  ¶ 10. The test results showed that the defendant possessed 7.19 net grams of methamphetamine; .38 net grams of cocaine base; and .40 net grams of cocaine.  ¶ 10.  The U.S. Attorney's Office was not aware that any further testing of the controlled substances seized from the defendant on the day of his arrest had been performed beyond the TruNarc field analysis in the SFPD Report, which contained only the gross weights of the substances seized from the defendant's person.  For this reason, the Plea Agreement also reflects the gross weights.  Upon learning that laboratory tests existed, the undersigned immediately obtained those results from the case agent and produced them to defense counsel.  Those results do not change the parties' recommended sentence in the Plea Agreement, although they do impact the calculation of the applicable sentencing guidelines, as set forth in further detail below.

### B.    Procedural History

Following his arrest on November 8, 2024, SFPD booked the defendant at San Francisco County Jail.  After an initial appearance in San Francisco Superior Court, the defendant was released on his own recognizance on November 11, 2024, and failed to appear for any subsequent proceedings in the state case against him.  On February 21, 2025, the United States filed a complaint based on the conduct that led to the defendant's November 8, 2024, arrest.  Dkt. 1.  On September 19, 2025, the defendant was arrested in an unrelated incident in Salinas, California, and was transferred to federal custody so this case could move forward.  Dkt. 18.  The defendant made an initial appearance before Magistrate Judge Joseph Spero on September 26, 2025, and was remanded to custody following a detention hearing before Magistrate Judge Lisa J. Cisneros on October 7, 2025.  Dkt. 5, 11.  The United States filed an information against the defendant on October 17, 2025, after which the defendant waived indictment. Dkt. 12, 16.  The defendant entered a guilty plea to the sole count in the information on December 4, 2025.  Dkt. 19.

### II.    APPLICABLE GUIDELINES AND CRIMINAL HISTORY CATEGORY

The government agrees with the Guidelines calculations set forth in the PSR, as well as Probation's assessment of the defendant's criminal history.  As explained above, the Plea Agreement reflects the gross weights of the controlled substances found on the defendant at the time of his arrest because the government was not aware that further testing had been done and net weights were

UNITED STATES' SENTENCING MEMORANDUM   3
3:25-CR-00339 JD

available.  The Probation Office has recalculated the Guidelines using the now-known net weights.

Based on the net weights, the applicable guidelines range is as follows:

a.  Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(12)                    14

b.  Special Offense Characteristic U.S.S.G. § 2D1.1(b)(18)              -2

c.  Acceptance of Responsibility, U.S.S.G. § 2D1.1(b)(18)            -2

d.  Zero-Point Offender Adjustment, U.S.S.G. § 4C1.1                   -2

**e.  Adjusted Offense Level**                                                                      **8**

**f.  Criminal History Category**                                                            **I**

The government agrees with U.S. Probation that the defendant has no prior convictions outside of this offense, *see* PSR ¶¶ 24-31, and that he therefore belongs in Criminal History Category I.  Based on a classification of Criminal History Category I and an adjusted offense level of 8, **the defendant's applicable Guidelines range is 0-6 months**.

This differs from the calculation in the Plea Agreement in only one criterion: the Plea Agreement assessed a base offense level of 16 based on the higher gross weights which were the only metrics known to the government at the time at which the defendant entered into the Plea Agreement.  The Plea Agreement sets forth a base offense level of 16, rather than 14.  It then applied the same deductions as shown in (b) to (d) above and the same Criminal History Category score of I.  Nonetheless, this difference in base offense level does not affect the government's sentencing recommendation, which the government believes fulfills the sentencing principles set forth in Section 3553(a).

**III.    SENTENCING RECOMMENDATION**

**A.    Legal Standard**

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing set forth by Congress in 18 U.S.C. § 3553(a)(2).  *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).  The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the Sentencing Guidelines.  *See id*.  After determining the appropriate Guidelines calculation, the Court should then evaluate the sentence for

substantive reasonableness in light of the factors set out in Section 3553(a).  *See id*. at 991-93.

In arriving at the appropriate sentence, and in accordance with 18 U.S.C. § 3553(a), the Court should consider these factors applicable to the case, among others:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for the sentence imposed to afford adequate deterrence to criminal conduct;

(4) the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(5) the need to provide restitution to any victims of the offense.

**B.      The Parties' Joint Recommendation Pursuant to the Plea Agreement**

The parties have agreed upon a joint sentencing recommendation of time served, plus one business day, followed by three years of supervised release with two special conditions: (1) a stay-away order from the Tenderloin, and (2) consent to suspicionless searches.  In the Plea Agreement, the defendant, who is a citizen of Honduras, admitted that he has no legal status in the United States and that he understood his guilty plea in this case renders his removal from the United States "a virtual certainty."  Plea Agreement at ¶¶ 2-3.

**C.      Probation's Recommendation**

U.S. Probation finds that the parties' proposed sentence and supervised release terms and special conditions are appropriate, noting that at the time of his sentence, the defendant will have served approximately six months in custody, which represents the high end of the applicable guidelines in this case.  *See* PSR, Sentencing Recommendation at 2.

**D.      Applying Section 3553(a) Factors**

**1.      The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

The defendant is a 28-year-old male who was born in Honduras.  PSR ¶ 3.  He lacks immigration status and is removable under U.S. law.  *Id*. ¶¶ 36-38.  Because there is an immigration detainer in place against the defendant, the government expects that the defendant will be transferred to the custody of the

Department of Homeland Security for removal proceedings following his release form the custody of the U.S. Marshals.

There are several mitigating factors that warrant the proposed sentence. First, the defendant is relatively young. Second, he has no criminal history; he had only been arrested once before the November 8, 2024, arrest that led to the charges in this case. That prior arrest concerned a dispute between the defendant and a former girlfriend, who alleged the defendant strangled her but later withdrew her complaint. PSR ¶ 29. Third, the amount of drugs in this case are relatively small given the large volumes that other dealers are known to possess in the Tenderloin. The defendant was not armed when he was arrested, did not engage in any violence during the observed transactions, and cooperated when SFPD approached to apprehend him. Furthermore, the government agrees with defense counsel's characterization of the defendant in the defense's sentencing memorandum at Page 4, Lines 21-25. Finally, while the government cannot verify the defendant's statements about certain traumatic events that led him to leave Honduras at age 18, it acknowledges he has expressed potential fear for his safety if he were to return there. Deportation would also result in the additional hardship of separating the defendant from his two U.S. citizen children, although they both currently live in other states, and it is not clear how often the defendant was able to visit them prior to his arrest in Salinas in September 2025.

As a result, the joint recommended sentence is appropriate here and should be imposed by the Court.

**2.    The Need for the Sentence to Reflect the Seriousness of the Offense; Promote Respect for the Law and Provide Just Punishment**

The Tenderloin, defined in the Plea Agreement to include the historical Tenderloin District and much of the South of Market neighborhood in San Francisco, is in crisis. As the Court knows, the rapid rise in access to highly addictive, potent, and cheap synthetic controlled substances like fentanyl and methamphetamine has devastated that community. The Tenderloin open-air drug market claims the lives of the individuals struggling with addiction through overdoses and fatalities, and it also exposes members of the public who live and work there to violence and public health threats. There is no question that the defendant's conduct contributed to this human suffering.

UNITED STATES' SENTENCING MEMORANDUM    6
3:25-CR-00339 JD

The proposed sentence—time served plus one day and a three-year term of supervised release with a Tenderloin stay-away order and suspicionless searches—reflects the seriousness of the defendant's conduct.  It is also supported by Probation, following a full Presentence Investigation Report that provides the Court with additional context about the defendant's circumstances.  Because the defendant will have been in custody for approximately 6 months at the time of sentencing and the defendant's applicable Guidelines are 0-6 months, the proposed sentence represents an upper-end Guidelines sentence rather than the downward variance the government has requested in other similar Tenderloin drug-trafficking cases in the past.

### 3. The Need for the Sentence to Afford Adequate Deterrence and Protect the Public from Further Crimes of the Defendant

The proposed sentence will protect the public and adequately deter the defendant from further trafficking in the Tenderloin.  The defendant agreed to enter a plea of guilty understanding that the very likely result would be deportation.  Removal from the United States will immediately separate the defendant from the Tenderloin and will prevent the defendant from committing new drug-trafficking crimes in the Tenderloin in the future.  Should the defendant return to the United States, he has also agreed to a three-year stay-away order and would be on notice that he is not permitted to return to the Tenderloin, a condition which provides an additional layer of security for that community.

## IV. The Necessity of the Proposed Special Supervised Release Special Conditions

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has pleaded guilty, 21 U.S.C. § 841(b)(1)(C), and is therefore required here even where the reality is that the defendant is anticipated to be removed from the United States upon release. In particular, the special stay-away condition of release is critical because it allows the government to accomplish one of the primary goals related to protection of the public: to immediately separate drug traffickers from the Tenderloin and to impose a strict stay-away order from the Tenderloin for three years.  Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation.  Combined with a suspicionless search condition, to which the parties have also agreed, the stay-away order will accomplish Section

3553(a)'s goals of protecting the public and deterring further crime by the defendant.

**CONCLUSION**

For the reasons stated above, the United States recommends that the Court sentence the defendant to a sentence of time served plus once court day, to be followed by a term of supervised release of three years and the special conditions agreed by the parties in the Plea Agreement, including the Tenderloin stay-away order and the suspicionless search condition. The Court should also order the forfeiture of the $139 in U.S. currency and pipe seized from the defendant at the time of his arrest. *See* Plea Agreement at ¶ 14.

DATED: March 2, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

JEAN FUNDAKOWSKI
Assistant United States Attorney

UNITED STATES' SENTENCING MEMORANDUM   8
3:25-CR-00339 JD